Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel. (707) 595-4414
Facsimile: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

John H. Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Telephone: (415) 561-9601
Facsimile: (415) 561-9609
john@scottlawfirm.net

Attorneys for the Plaintiffs MARQUS MARTINEZ
and MICHAELA STAGGS

.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARQUS MARTINEZ and MICHAELA STAGGS, on behalf of themselves and other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SANTA ROSA and RAINER "RAY" NAVARRO,<br><br>Defendants. | Case No.<br><br>VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF<br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.      On Monday, May 25, 2020, George Floyd was murdered by an officer of the Minneapolis Police Department ("MPD"). The events of Mr. Floyd's arrest and murder were captured on video by multiple bystanders as well as individual officers' body cameras. The videos depicted Mr. Floyd pinned on the street, face down and increasingly unresponsive, and calling out "I can't breathe!" while MPD Officer Derek Chauvin knelt on Mr. Floyd's upper back and neck. Other officers stood by watching Mr. Floyd die without lifting so much as a finger to intervene. All four officers were shortly fired, and Minnesota's Attorney General has levied charges of murder against the perpetrators of this horrible crime.

2.      Nationwide protests have erupted in response to this brutality and have continued largely unabated as violent police responses to protesters nationwide have given rise to new and further demonstrations, which have in turn been met with more violence from the police.

3.      Santa Rosa's first protest occurred on May 30, 2020. Protests and demonstrations have continued nearly every night since. Thousands of citizens have taken to the streets in solidarity with the Black Lives Matter movement and have assembled peacefully in downtown Santa Rosa. Incidents of destructive activity have been notably few.

4.      Nonetheless, the Santa Rosa Police Department (and other departments working at their invitation) unjustifiably declared these lawful protests "unlawful assemblies" so as to deter further civilian participation in the protests and to set the stage for their illegal use of force. At the direction of the Chief of Police, SRPD shifted almost immediately to the use of violent riot control tactics without regard for the safety and constitutional rights of those assembled. These tactics have included the widespread and indiscriminate use of teargas against nonviolent protesters without warning, and the use of less-lethal munitions such as sting ball grenades, chalk grenades, and rubber bullets in methods designed to maximize the likelihood of serious injury (i.e., aiming at protesters' heads).

5.      The use of these tactics has continued despite clear reports of protesters being maimed and suffering serious injuries. The Chief of Police has publicly stated that his officers do

- 1 -

not aim for the head, but the injuries of protesters speak to the contrary. At best they demonstrate indiscriminate firing into crowds of innocent people; at worst they represent something far more sadistic.

6.      Santa Rosa's Chief of Police, Rainer "Ray" Navarro, has described these as "isolated incidents" yet simultaneously has justified these uses of force by claiming that "my officers were put in great danger," and that the officers "acted with restraint." He has further publicly stated that protesters were "far from peaceful" and that his officers used force "when provoked by protesters." Santa Rosa police spokesperson Lieutenant Jeanene Kucker stated that the less-lethal munitions were used against "individuals or crowds who pose immediate or potential threats. People holding weapons, throwing weapons… If someone chose to be a part of that crowd late Sunday night, they were being dispersed because of their apparent threat to us…" These statements constitute an organized whitewash of the events at issue in this lawsuit, and video evidence of these events exposes each of these claims as a lie. In the meantime, no officers have been placed on administrative leave, no officers have been disciplined, and no police video of the violence has been released by SRPD, despite the hospitalization of numerous protesters and the public outcry against the indiscriminate and unnecessary use of such gratuitous violence against civilians assembled in lawful protest.

7.      SRPD's actions, moreover, were in violation of the department's own policy and procedures and/or caused by the omission of needed policies and procedures.

8.      Plaintiffs bring this action to ask the Court to restrain the City of Santa Rosa from further violence and unconstitutional conduct.

## THE PARTIES

9.      Plaintiff Marqus Martinez is a resident of Santa Rosa, California. He is a 33-year-old Native American.

10.     Plaintiff Michaela Staggs is a resident of Santa Rosa, California. She is a 20-year old white woman.

- 2 -

11.     Defendant City of Santa Rosa is a municipal corporation, duly organized and existing under the laws of the State of California, and is the employer of the Chief of Police, Ray Navarro, and the to-be-identified individual officers who carried out the acts and omissions complained of herein.

12.     At all material times, the City of Santa Rosa was responsible for supervising, enacting, and enforcing SRPD's conduct, policies, and practices; the absence of needed policies and practices; and for the hiring, retention, supervision, and training of employees and agents of SRPD.

13.     At all material times herein, Defendant Ray Navarro was employed by Defendant City of Santa Rosa as the Chief of Police and was acting within the course and scope of that employment. He is being sued in his individual and official capacities as Santa Rosa's Chief of Police. At all material times, Chief Navarro was the final policy making official for SRPD, and was ultimately responsible for all policies, procedures or omission of procedures, supervision, and training of SPRD employees. At all material times, Defendant Navarro acted under color of law.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (claims arising under the U.S. Constitution) and § 1343(a)(3) claims brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the U.S. Constitution), and 42 U.S.C. § 1983.

15.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because defendants are located in the Northern District of California and § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the City of Santa Rosa, Sonoma County, California.

//

- 3 -

**PLAINTIFFS' ALLEGATIONS**

16.     The City of Santa Rosa is the county seat for Sonoma County and located approximately 50 miles north of San Francisco and just north of Marin County. In the last twenty years, Sonoma County has seen 91 police-related deaths, including the watershed moment of the shooting of 13-year old Andy Lopez in 2013, which brought police violence to the fore of public debate in Sonoma County's communities, and especially in Santa Rosa.

17.     After the Sonoma County Sheriff's Office, the Santa Rosa PD is the next largest law enforcement agency in the county. It has approximately 250 sworn officers and a paramilitary chain of command headed by a chief of police who is appointed by and serves at the pleasure of the city council. Until recently, SRPD employed a full-time police auditor, but following a critical report to the City in 2018, Santa Rosa elected not to renew the auditor's contract, and the position has since been left vacant.

**MARQUS MARTINEZ**

18.     Plaintiff Marqus Martinez (Marqus) is a 33 years-old Native American and a member of the Pomo Indian Tribe. He is a father of five, and a surviving victim of police brutality. On Sunday May 31, 2020, Marqus attended a peaceful demonstration in support of the Black Lives Matter movement in downtown Santa Rosa near the Old Courthouse Square. As the number of peaceful protesters grew, mostly young people in their teens and twenties, so did the number of police officers dressed in riot gear.

19.     While peacefully protesting with others, Marqus took a knee and invited the officers to take a knee with him in solidarity, but he received no response. After approximately thirty minutes, tactical teams of police in riot gear approached the protesters and began firing teargas into the peaceful crowd. A tear gas canister exploded next to Marqus, causing shortness of breath and his eyes to tear up. Other protesters provided baking soda mixed with water to help stop the burning.

20.     The crowd dispersed. Many peaceful protesters, including Marqus, withdrew several blocks to the intersection of Mendocino and College Avenues. Protesters began to loosely congregate at the intersection. Marqus turned to face the advancing police and again took a knee,

- 4 -

raising his hands in the air to show he was not a threat, but as the officers advanced in a phalanx they again began to fire more tear gas and rubber bullets in the direction of the protesters. In response Marqus stood up and began filming the police with his cell phone, calling out that the police were firing on innocent people. Only a few short seconds into his filming, police fired a sting ball grenade directly into Marqus' face.[1] The grenade impacted Marqus' mouth and exploded. The force of the explosion ripped Marqus' face open and destroyed his phone. Video of this event was filmed by Marqus and is available at

https://www.youtube.com/watch?v=eekVT7nJfBU&feature=youtu.be.

21.     His upper lip was split in three places up to his nose, and his teeth had been broken off and driven into the roof of his mouth. One tooth was broken off and driven all the way through his tongue. His jaw was broken in multiple locations, and he was concussed. A friend drove him to a Santa Rosa hospital as Marqus tried to hold his face together. When he arrived at the hospital he didn't recognize his own face. The hospital was unable to treat wounds of his severity, and transported Marqus to Stanford's emergency department where he immediately underwent extensive surgery. At the time of this filing, Marqus continues to lose teeth and requires further surgery. Photographs of Marqus' injuries are attached as Exhibit 1. A photograph of the grenade that hit Marqus' face is attached as Exhibit 2.

**MICHAELA STAGGS**

22.     Michaela Staggs (Michaela) is twenty years old and lives in the City of Santa Rosa. On the evening of Saturday, May 30, 2020 Michaela, together with two friends, drove to downtown Santa Rosa to attend a Black Lives Matter demonstration. As Michaela and her friends approached Old Courthouse Square in downtown Santa Rosa she observed a large crowd of

---

[1] A sting ball grenade is a hard-shelled explosive device a little larger than a baseball. It is aimed and fired from a launcher and travels at 200 feet per second. The device explodes upon impact as a flash-bang grenade and launches 180 rubber projectiles in every direction. It further deploys tear gas in a fifty-foot radius. Per the manufacturer, it is intended to be a weapon of last selection against potentially violent or dangerous subjects when teargas and other less-lethal munitions have failed. The manufacturer specifically cautions that improper use of the device can cause serious injury or death.

people peacefully protesting and a line of police in riot gear.

23.     Michaela began to livestream the protest on Facebook from her phone because she believed the people peacefully demonstrating near the vicinity of the police were in danger from the officers. For no apparent reason the police announced the protest was an unlawful assembly and ordered the crowd to disperse. Michaela was concerned about being arrested and retreated down Mendocino Avenue to the corner of Fourth and Mendocino Avenues. Another crowd had gathered in this area and were surrounded by police in riot gear.

24.     Michaela and her friends again withdrew in fear for their safety to an area near Seventh Street and Mendocino Avenue. The police advanced in phalanx formation, pounding their batons on their shields as they moved forward. They shined flashlights on the cameras of protesters attempting to record their activities, so as to wash out the camera's ability to record. The officers began firing teargas canisters and rubber bullets towards the protesters without provocation. As Michaela watched the line of police approach the intersection, she was shot in the forehead with a M871 40mm chalk grenade.[2] The force of the impact took her to the ground. Blood began pouring down her face filling her mouth and eyes. Nearby protesters rushed to her aid and wrapped her head in bandages to control the bleeding. Video of this event was filmed by a bystander and is available at https://www.youtube.com/watch?v=gfa-Nta62fw&feature=youtu.be.

25.     She was then taken to a local hospital where she was treated in the emergency department and given three subdermal stitches and ten surface stitches to close the wound. At the time of this filing Michaela's injuries are still visible. The bright orange chalk from the grenade remains visible under her skin. Michaela suffered dizziness, headaches, and nausea for days following the event, and will likely suffer permanent scarring across her forehead. Photographs of Michaela's injuries are attached as Exhibit 3.

---

[2] The M781 round is not an approved munition for less-lethal applications. It is, in fact, a training round, designed to mimic the ballistic performance of 40mm grenades without high explosive or chemical effects. It is nonetheless categorized as an explosive, destructive device by the BATF. The M781 projectile is propelled from a launcher at 240-250 feet per second and contains an orange chalk core to mark its point of impact. Like all 40mm grenades, the M781 may be fired with tremendous accuracy.

VERIFIED APPLICATION FOR TRO AND CLASS ACTION COMPLAINT

26.     Plaintiffs suffered unnecessary pain, trauma, ongoing stress and anxiety, and have been deterred from freely exercising their right to peaceably assemble as a result of defendants' tortious, wrongful, and constitutionally violative conduct.

## CLASS ALLEGATIONS

27.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the basis that there is a well-defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

28.     Plaintiffs seek to represent the following class: All demonstrators who participated in or intended to participate in the protests beginning on May 30, 2020 in the City of Santa Rosa.

29.     Plaintiffs Marqus Martinez and Michaela Staggs seek to represent the following subclass: all demonstrators who were subjected to SRPD's use of teargas at the protests in Santa Rosa beginning on May 30, 2020. This subclass will be referred to as the "teargassed demonstrators."

30.     Plaintiffs Marqus Martinez and Michaela Staggs seek to represent the following subclass: all demonstrators who were subjected to SRPD's use of "less-lethal" projectiles at the protests in Santa Rosa beginning on May 30, 2020. This subclass will be referred to as the "projectile-injured demonstrators."

31.     Plaintiffs Marqus Martinez and Michaela Staggs seek to represent the following subclass: all demonstrators who were subjected to SRPD's unconstitutional actions because of their attempts to record police activity. This subclass shall be referred to as the "video recording class."

32.     Plaintiffs and the putative class were subjected to the constitutional and statutory violations described in the complaint. Upon information and belief, the legal and factual issues are common to the class and affect all class members.

33.     Plaintiffs reserve the right to amend or modify the class and subclass descriptions

VERIFIED APPLICATION FOR TRO AND CLASS ACTION COMPLAINT

with greater specificity or further division into subclasses, as well as to limit the class or subclass to particular issues as warranted.

**NUMEROSITY**

34.     The potential members of the class and of the subclasses as defined are so numerous that joinder of all of them is impracticable. While the precise number of class members has not been determined at this time, plaintiffs are informed and believe that the class is comprised of hundreds of individuals. The potential members of each subclass may exceed 100 demonstrators.

**COMMONALITY AND PREDOMINANCE**

35.     There are questions of law and fact that are common to the class and subclasses and predominate over individualized questions. These common questions of law and fact include, without limitation:

a.   Does the use of teargas as deployed by SRPD infringe upon demonstrators' constitutional rights to be free of excessive force, to peaceably assemble, to the freedom of expression, and to the freedom from viewpoint discrimination under the First Amendment?

b.   Does the use of "less-lethal" projectile weapons as deployed by SRPD infringe upon demonstrators' constitutional rights to be free of excessive force, to peaceably assemble, to the freedom of expression, and to the freedom from viewpoint discrimination under the First Amendment?

c.   Has the City of Santa Rosa manifested a failure to adequately train and supervise its police officers to properly utilize teargas and other "less-lethal" weaponry?

d.   Are the policies of the City of Santa Rosa sufficient to protect demonstrators' constitutional rights?

e.   Has the City of Santa Rosa exhibited deliberate indifference to the rights of demonstrators through the unconstitutional conduct complained of herein?

f.   Did the City of Santa Rosa engage in a pattern of the deliberate use of less-lethal munitions in such a way as to maximize potential harm to the demonstrators?

**TYPICALITY**

36.   Named plaintiffs' claims are typical of the claims of putative class members. Plaintiffs and all members of the putative class sustained injuries and damages arising out of and caused by defendants' conduct, which, as alleged herein, violates federal and California law.

**ADEQUACY OF REPRESENTATION**

37.   Plaintiffs adequately represent and protect the interests of class and subclass members. Plaintiffs have no interests that are adverse to the class. Plaintiffs are similarly situated to other class and subclass members. Counsel who represents plaintiffs are competent and experienced in litigating civil rights actions, multiple-plaintiff civil rights actions, and police misconduct cases generally.

**SUPERIORITY OF CLASS ACTION**

38.   A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each member of the class has been damaged and is entitled to recovery by reason of the unlawful policies and practices described herein. Class members are unlikely to otherwise obtain effective representation to ensure full enforcement of their rights absent class certification.

39.   Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

40.   Further, plaintiffs seek declaratory and injunctive relief, which is a remedy well-suited for class action litigation.

VERIFIED APPLICATION FOR TRO AND CLASS ACTION COMPLAINT

**MUNICIPAL ALLEGATIONS**

41.     The City of Santa Rosa has policies and customs of violating the freedom of expression of protesters and of using excessive force against such protesters.

42.     The City of Santa Rosa has a custom or policy of deploying chemical agents and injurious, less-lethal ballistics against protesters without provocation. Santa Rosa has a custom or practice of using force and intimidation against demonstrators for no reason other than to show its dominance and suppress lawful protests.

43.     The City of Santa Rosa has failed to train and/or inadequately trained its police officers in the use of chemical agents and "less-lethal" projectiles. This is demonstrated in part by the fact that officers are aiming potentially deadly devices at protesters' heads when proper training and policies would instruct that this should never be done. The consequences of this lack of training are plainly obvious.

44.     The City of Santa Rosa has a custom or practice of infringing on peoples' right to assemble, to protest, to express their political and other beliefs, and on the basis of their viewpoint.

**CAUSES OF ACTION**

**COUNT I:**
**[*Monell* and Supervisory Liability - Fourth Amendment/Excessive Force, 42 U.S.C. 1983]**
By all plaintiffs against Defendants City of Santa Rosa and Chief Navarro

45.     Plaintiffs and the Plaintiff Class restate and re-allege all previous paragraphs of this Complaint.

46.     Plaintiffs and the Plaintiff Class were seized when officers intentionally used unreasonable force by way of chemical agents and "less-lethal" projectiles.

47.     Defendants' officers and agents, under color of law, committed these acts without justification or warning, and as a result, these acts were objectively unreasonable and constituted unlawful seizures and excessive force.

48.     Plaintiffs and the Plaintiff Class did not pose a threat to any of the defendants'

- 10 -

officers, agents or any other person. Plaintiffs and the Plaintiff Class did not participate in riotous acts, looting, or the destruction of property.

49. It was Santa Rosa's custom and policy, as well as their failure to train and supervise their officers and/or issue corrective instructions after violations were brought to the City's attention, that caused the unlawful use of excessive force.

50. Santa Rosa's failure to supervise and train their employees and agents with respect to the Fourth Amendment rights of Plaintiffs and the Plaintiff Class, including a failure to discipline officers for Fourth Amendment violations, amounts to deliberate indifference to the rights of Plaintiffs and the Plaintiff Class. The pattern of similar constitutional violations against Plaintiffs and the Plaintiff Class that occurred during these protests demonstrates the deliberate indifference of Santa Rosa to the rights of Plaintiffs and the Plaintiff Class.

51. Further, given the pattern and practice of constitutional violations documented above, the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that Santa Rosa demonstrated their deliberate indifference to the need for such training and supervision.

52. Plaintiffs' Fourth Amendment rights were violated when they were deliberately and unjustifiably targeted and shot with rubber bullets, teargas, sting ball grenades, chalk grenades, flashbang grenades, and/or pepper balls during the course of their lawful protests.

53. Plaintiffs and the Plaintiff Class reasonably fear further violence in the future in violation of the Fourth Amendment if they continue to peaceably assemble in protest of their government, observe and record the police, and/or participate in other constitutionally protected activity.

## COUNT II:
**[*Monell* and Supervisory Liability - First Amendment, 42 U.S.C. 1983]**
By all plaintiffs against Defendants City of Santa Rosa and Chief Navarro

54. Plaintiffs and the Plaintiff Class restate and re-allege all previous paragraphs of this Complaint.

- 11 -

55.    Plaintiffs and the Plaintiff Class engaged in constitutionally protected acts of observing, recording, and participating in events of public interest, including public demonstrations and the police response thereto, and in so doing engaged in expressing their political views. Plaintiffs and the Plaintiff s' Class will continue to do so in the future.

56.    Defendants' officers and agents retaliated against Plaintiffs and the Plaintiff Class for engaging in constitutionally protected activity and for the content and viewpoint of their expressions. This retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief. Plaintiffs and the Plaintiff Class reasonably fear the continued deliberate and unjustifiable use of rubber bullets, teargas, sting ball grenades, chalk grenades, flashbang grenades, and/or pepper balls during the course of their lawful protests.

57.    These acts would chill a reasonable person from continuing to engage in a constitutionally protected activity. These acts did, in fact, chill Plaintiffs and the Plaintiff Class from continuing to observe and record some events of public interest and to participate in peaceful protests.

58.    It was the City of Santa Rosa's custom and policy, as well as its failure to train and supervise their officers, and issue corrective instructions after violations were brought to light that caused these First Amendment violations.

59.    The City's failure to supervise and train their employees and agents with respect to the First Amendment rights of Plaintiffs and the Plaintiff Class, amounts to deliberate indifference to the rights of Plaintiffs and the Plaintiff Class.

60.    The pattern of similar constitutional violations against Plaintiffs and the Plaintiff Class that occurred during the protests demonstrates the deliberate indifference of the City to the rights of Plaintiffs and the Plaintiff Class.

61.    Further, given the multiple constitutional violations documented above, the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the continued violation of constitutional rights, that the City's deliberate indifference to the need for such training and supervision was profound and without

- 12 -

excuse.

62.    The First Amendment rights of Plaintiffs and the Plaintiff Class were violated when they were deliberately targeted and shot with chemical agents and "less-lethal" projectiles during the course of their protest activities.

63.    Plaintiffs and the Plaintiff Class reasonably fear further retaliation in the future if they continue to observe, record, or participate in constitutionally protected activity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and as representatives of the class defined herein, pray for relief as follows:

1.    A temporary restraining order barring the City of Santa Rosa from the use of teargas or other chemical agents, rubber bullets, and other "less-lethal" projectiles in response to non-violent protesters;

2.    A temporary restraining order barring the City of Santa Rosa from interfering and attempting to interfere with civilian efforts to video record the police;

3.    A preliminary injunction barring Defendants from engaging in unconstitutional conduct alleged herein;

4.    A determination that this action may proceed as a class action under Rule 23;

5.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as class counsel;

6.    A declaration that Defendant's conduct violated the First and Fourth Amendments of the United States Constitution;

7.    A permanent injunction barring Defendants from engaging in the unconstitutional conduct alleged herein;

8.    Damages compensating Plaintiffs for their injuries, including but not limited to compensatory, pecuniary, and medical expense damages;

- 13 -

9. An award of prejudgment interest;

10. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

11. An award of such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all issues triable.

SCHWAIGER LAW FIRM

Dated: June 23, 2020          /s/ Izaak David Schwaiger
                             Izaak David Schwaiger
                             Attorney for Plaintiffs


SCOTT LAW FIRM

Dated: June 23, 2020          /s/ John Houston Scott
                             John Houston Scott
                             Attorney for Plaintiffs

- 14 -

## VERIFICATION

I, Marqus Miles Martinez, declare as follows:

I am a plaintiff to this action. I have read the foregoing Verified Complaint and know its contents. The matters stated in the Verified Complaint are true based on my own knowledge, except where stated on information and belief, and as to such matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed on June 22, 2020 at Sebastopol, California.


MARQUS MILES MARTINEZ

-15-

VERIFIED APPLICATION FOR TRO AND CLASS ACTION COMPLAINT

## VERIFICATION

I, Michaela LeAnne Staggs, declare as follows:

I am a plaintiff to this action. I have read the foregoing Verified Complaint and know its contents. The matters stated in the Verified Complaint are true based on my own knowledge, except where stated on information and belief, and as to such matters, I believe it to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed on June 22, 2020 at Sebastopol, California.

MICHAELA LEANNE STAGGS

-16-

VERIFIED APPLICATION FOR TRO AND CLASS ACTION COMPLAINT

# EXHIBIT 1





# EXHIBIT 2



# EXHIBIT 3

