UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUS MARTINEZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF SANTA ROSA, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-04135-VC<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 53 |

　　　　Santa Rosa's motion to dismiss the municipal liability claim for Fourth Amendment violations is denied because the plaintiffs have adequately alleged ratification/decision-making by a policymaker as well as deliberate indifference by virtue of failure to train. The motion to dismiss the municipal liability claim for First Amendment violations is granted because the allegations are generic and boilerplate.

　　　　<u>Municipal Liability for Fourth Amendment Violations</u>

　　　　The complaint focuses on the Santa Rosa Police Department's response to the Black Lives Matter protests on three nights. It alleges many Fourth Amendment violations, including officers indiscriminately firing tear gas into peaceful crowds. The complaint further alleges that the officers committed these acts "[a]t the direction of the Chief of Police" and that their conduct "continued despite clear reports of protestors being maimed and suffering serious injuries." According to the complaint, the police chief subsequently defended his officers' conduct in public, claiming that the protestors were "far from peaceful" and that "[his] officers were put in great danger," "acted with restraint," and only used force "when provoked by protestors."

　　　　These allegations give rise to a claim for municipal liability on a theory of ratification or

decision-making by a policymaker. *Monell* is about responsibility. It limits municipal liability to acts that are "of the municipality"—ones that the municipality has sanctioned or ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986). Thus, in a more typical police case, involving an isolated incident of alleged misconduct against one or two citizens, it is hard to infer that the conduct of a police officer is attributable to the municipality. And in such a case, it might be a stretch to infer—merely from a police chief's after-the-fact general defense of the officer—that the municipality is responsible for the officer's conduct. *Cf. Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001); *Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997) *opinion amended on denial of rehearing*, 137 F.3d 1372 (9th Cir. 1998); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

This case involves a different situation. The complaint suggests that the Black Lives Matter protests (along with the activity that spun off from the protests) gripped Santa Rosa, prompting the full attention of the entire police department, from the police chief to command staff to line officers. In times like that, when the department is executing an organized, department-wide response, one can presume that the police chief was in control of his department, either directing that response himself or—at the very least—ratifying the actions of his subordinates. Therefore, it becomes easier to infer that the repeated conduct of individual police officers is really the conduct of the department, particularly when the police chief makes comments that could be interpreted as suggesting that the officers who used force did not meaningfully deviate from the department's plan for how to control the crowds. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 979-80 (N.D. Cal. 2017), *affirmed in part, dismissed in part*, 897 F.3d 1125 (9th Cir. 2018); *Dorger v. City of Napa*, 2012 WL 3791447, at *6 (N.D. Cal. Aug. 31, 2012).

In requesting dismissal of this claim, the City appears to ask the Court to draw an inference that the police chief was not meaningfully aware of either the department's plan for responding to the protests or the degree to which the conduct of the officers involved in these

high-profile incidents conformed to that plan. It would not be appropriate to draw that inference at this stage of the case, where the allegations in the complaint must be presumed true and all reasonable inferences must be drawn in the plaintiffs' favor. Instead, it is reasonable to infer that the conduct of the individual officers was directed or ratified by the police chief.

The plaintiffs also make various allegations about the City's inaction, including that Santa Rosa lacks any written policy on tear gas and has failed to train its officers in the use of chemical agents and less-lethal projectiles. As discussed at the hearing, the Court has concerns about the veracity of these allegations. But that's not a reason to grant a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). And the allegations, if they somehow turn out to be true, describe a failure to train so colossal that it reflects deliberate indifference by the City towards the constitutional rights of its citizens. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989).

The City notes that a single failure by a municipality to prepare police officers for a particular scenario cannot give rise to municipal liability unless it is a scenario that the municipality knows will arise frequently. *See Connick v. Thompson*, 563 U.S. 51, 63 (2011). But that's what the complaint describes. Although a police department may not need to use tear gas frequently, it certainly needs to engage in crowd control frequently, and that would be obvious to any municipality (particularly a city like Santa Rosa, the largest city in, and the business center of, Sonoma County). It would thus be obvious to the City that it needed to train its officers in crowd control, including in the use of major crowd-control tools like the tear gas it had on hand for this very purpose.

Municipal Liability for First Amendment Violations

In contrast, the plaintiffs have failed to state a municipal liability claim for First Amendment violations. They allege in generic, boilerplate terms that the City "has a custom and practice of infringing on peoples' right to assemble, to protest, and to express their political beliefs on the basis of the content of the protestors' speech," and that it was "the City of Santa Rosa's custom and policy, as well as its failure to train and supervise their officers, and issue

3

corrective instructions after violations were brought to light that caused First Amendment violations." These allegations are not adequate to hold the City liable for the alleged retaliation by individual officers against protestors based on their speech or filming, so the claim is dismissed. And because the plaintiffs have not articulated how their allegations could be bolstered, dismissal is without leave to amend. As discussed at the hearing, if discovery on the claims that are moving forward reveals evidence in support of a municipal liability claim for First Amendment violations, the plaintiffs may seek leave to amend at that time.

**IT IS SO ORDERED.**

Dated: November 5, 2020

VINCE CHHABRIA
United States District Judge